IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CR-340-1D
No. 5:22-CV-66-D

| | |
|---|---|
| ELBERT TOJUAN MCNEIL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PETITIONER'S § 2255 MOTION

Respondent, by and through the United States Attorney for the Eastern District of North Carolina, submits this memorandum in support of its Rule 12(b)(6) motion to dismiss Petitioner's motion under § 2255 to vacate, set aside, or correct his sentence ("Section 2255 Motion") [D.E. 81].

SUMMARY OF ARGUMENT

In his Section 2255 Motion, Petitioner makes two main claims: (1) his attorney provided ineffective assistance of counsel at the pre-trial phase because counsel did not inform Petitioner of the consequences of pleading guilty, file any substantive pretrial motions, conduct an adequate investigation, or attempt to negotiate a favorable plea agreement; and (2) his attorney provided ineffective assistance of counsel at the sentencing phase because counsel failed to properly discuss and explain the PSR to McNeil prior to the sentencing hearing, failed to file substantive objections

1

to the PSR, and failed to file a Notice of Appeal. [D.E. 81] Petitioner's claims are without merit, and must be dismissed for failure to state a claim.

## FACTUAL AND PROCEDURAL STATEMENT

In January of 2018, the Fayetteville Police Department ("FPD") began investigating Petitioner's drug trafficking activities. During the course of the investigation, FPD detectives utilized a confidential source to conduct multiple controlled purchases of crack cocaine from Petitioner. [PSR ¶ 10]. On January 8, 2019, FPD executed a search warrant at Petitioner's residence on Coronada Parkway in Fayetteville. Petitioner was the only individual present in the residence when officers arrived and disclosed the location of a stash of crack cocaine and two firearms in the residence. [PSR ¶ 11]. Petitioner then waived his Miranda rights and agreed to speak with investigators. According to Petitioner, from 2015 until mid-2018, Petitioner purchased two ounces of powder cocaine per week, in order to cook it into crack cocaine and distribute that crack cocaine in the community. [PSR ¶ 12]. Petitioner also informed detectives that the firearms in the residence belonged to him, and that he kept the firearms in the residence to protect himself in the course of his drug trafficking activities. [D.E. 88 p. 30]. The PSR concluded that, from 2015 to February of 2019, Petitioner was accountable for the distribution of 10.21 kilograms of crack cocaine. [PSR ¶ 13].

Petitioner was named in a nine-count Superseding Indictment filed in the Eastern District of North Carolina on April 9, 2019. Count 1 charged Conspiracy to Distribute and Possess with Intent to Distribute 280 grams or more of Cocaine Base

in violation of 21 U.S.C. § 846. Counts 2 through 6 charged Distribution of a Quantity of Cocaine Base on multiple occasions in violation of 21 U.S.C. § 841(a)(1). Count 7 charged Possession with Intent to Distribute a Quantity Cocaine Base in violation of 21 U.S.C. § 841(a)(1). Count 8 charged Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924, and Count 9 charge Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(a). [PSR ¶ 1-5].

On April 20, 2020, Petitioner pleaded guilty pursuant to a written plea agreement to Conspiracy to Distribute and Possess with Intent to Distribute 280 grams or more of Cocaine Base (Count 1), Possession with Intent to Distribute a Quantity Cocaine Base (Count 7), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count 9). Pursuant to the plea agreement, the Government agreed to dismiss Counts 2 through 6 and Count 8 at sentencing. [PSR ¶ 7]. At his arraignment, Petitioner was advised of, *inter alia*, his right to plead not guilty and have a jury trial on the charges he faced, and the rights he would have at that trial. [D.E. 88, at 4]. He was also advised that if he pleaded guilty he would be waiving his right to a jury trial and also the trial rights available to him. *Id.*, at 5. The Court explained that if Petitioner pleaded guilty, he would be judged guilty and sentenced on the basis of his guilty plea after the Court considers all relevant sentencing factors under 18 U.S.C. § 3553(a), considers any departure or variance motion, and considering the advisory federal sentencing guidelines. *Id.*

3
Case 5:18-cr-00340-D    Document 91    Filed 05/09/22    Page 3 of 15

The Court asked the defendants in the courtroom as a group certain questions, and Petitioner gave no indication that he did not understand his rights or what was happening that day, that he had not discussed his case with his attorney, or that he was not fully and completely satisfied with his lawyer's legal services. [D.E. 88, at 12-13]. After being sworn in, Petitioner confirmed he understood the Court when it described all the rights he had under the Constitution and laws of the United States, and asked all of the questions the defendants were asked as a group. *Id.*, at 14-15. Neither Petitioner's counsel nor Government's counsel expressed any concerns regarding the Petitioner's competency. *Id.* at 15.

Petitioner was advised of the charges against him and the penalties he faced with respect to each charge, and he confirmed that he understood the charges and potential penalties. [D.E. 88, at 15-21]. He also confirmed that he understood the possible consequences of pleading guilty, and that he had an absolute right to plead not guilty to all of the charges. *Id.*, at 21. When asked if anyone threatened him or anyone else or forced him in any way to plead guilty, Petitioner responded, "No Sir." *Id.*, at 23. When asked if anyone made any promise to him or anything else to make him plead guilty, he again responded, "No Sir." *Id.* at 23. This Court then confirmed with Petitioner that he signed the plea agreement, understood each term of the plea agreement, and had read and discussed the entire plea agreement with his lawyer before signing it. *Id.* at 24. Petitioner confirmed that he understood that if he pleaded guilty to the charges and the Court accepted that plea of guilty, he would not later be able to withdraw his guilty plea. *Id.*, at 25. After confirming that Petitioner answered

4

all of the Court's questions truthfully, this Court read Counts 1, 7, and 9 to Petitioner, and Petitioner pleaded guilty to those Counts and confirmed he had, in fact, committed those crimes. *Id.*, at 27. After Government counsel proffered what the evidence would show if the matter proceeded to trial, the Court determined the guilty plea was supported by an independent factual basis containing each essential element of the offense. *Id.*, at 31. The Court also found that Petitioner's plea was freely and voluntarily entered, that Petitioner was fully competent at the time of the hearing, and that Petitioner had a full and complete understanding of the nature of the charges against him and the maximum penalties authorized by law. *Id.*

Petitioner's sentencing hearing was held on August 3, 2020. At the outset of the hearing, this Court confirmed that Defense counsel received a copy of the presentence report and that Petitioner discussed the presentence report with counsel. [D.E. 89 at 4]. This court also confirmed with both Petitioner and his counsel that there were no objections to the presentence report. *Id.*, at 5. Hearing no objections, this Court determined Petitioner's total offense level to be 31, his criminal history category to be VI, and the advisory guideline to be 262 to 327 months. *Id.*, at 5. After considering the Government's motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), this Court sentenced Petitioner to 108 months on Counts 1 and 7, and 60 months consecutive on Count 9, for a total sentence of 168 months. *Id.*, at 18. An amended judgment was filed on February 12, 2021, to included forfeiture information. [D.E. 79].

5

Petitioner has a criminal history which includes convictions for Burglary and Rape in Cumberland County Superior Court in 1999. In that case, Petitioner was sentenced to 85 to 111 months' incarceration, released on post-release supervision, and then reimprisoned after his post release supervision was revoked for new criminal conduct. [PSR ¶ 25]. That new criminal conduct included Possession with the Intent to Sell or Deliver Cocaine, which Petitioner was convicted of in March of 2009. [PSR ¶ 28]. In 2015, Petitioner was convicted of Possession of Firearm by a convicted Felon and several drug offenses, and given a probationary sentence. [PSR ¶ 31]. Petitioner was still on probation at the time he committed the instant offenses of conviction. [PSR ¶ 34].

Petitioner did not appeal. On February 17, 2022, Petitioner filed the instant Section 2255 Motion. For the reasons to follow, Petitioner's Section 2255 Motion must be dismissed for failure to state a claim upon which relief can be granted.

## ARGUMENT

A. Standard of Review

A petitioner seeking to vacate a sentence pursuant to Section 2255 bears the burden of proving that the sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the sentencing court lacked jurisdiction, that the sentence exceeded the maximum allowed by law, or that the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests the legal and factual sufficiency of a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-

78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a motion to dismiss, a court is not required to accept as true a petitioner's legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.2d 298, 302 (4th Cir. 2008); *Iqbal*, 556 U.S. at 678.

In reviewing the facts of the case, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The court is also allowed to consider "the files and records of the case" in determining whether a motion to dismiss is warranted. 28 U.S.C. § 2255(b); see *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. at 695. When analyzing an ineffectiveness claim, a court may rely on its own familiarity with the case. *See Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977); *United States v. Dyess*, 730 F.3d 354, 359-60 (4th Cir. 2013).

B. Discussion

1. Petitioner's claim that counsel was ineffective at the pre-trial phase is without merit.

First, Petitioner's claim that his counsel was ineffective at the pre-trial phase because counsel did not inform Petitioner of the consequences of pleading guilty, file any substantive pretrial motions, conduct an adequate investigation, or attempt to

negotiate a favorable plea agreement is without merit. Indeed, this claim is belied by the Petitioner's guilty plea at the Rule 11 colloquy.

"The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. *See, e.g., Missouri v. Frye*, 566 U.S. 134, 140 (2012); *Lafler v. Cooper*, 566 U.S. 156, 164-65 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." *United States v. Breckenridge*, 93 F.3d 132, 135 (4th Cir. 1996); see *Glover*, 531 U.S. at 203-04.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The petitioner bears the burden of proof as to both prongs of the *Strickland* standard. *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010).

Under the first prong, the petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. When determining

whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." *Id*. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

As to the second prong, the petitioner must demonstrate that counsel's inadequate performance was prejudicial to him. *Id*. at 687. Specifically, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*. "Failure to raise a meritless argument can never amount to ineffective assistance." *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996).

Further, when a defendant has pled guilty, the hurdle to establish prejudice is high. *See Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Such a defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A defendant's "subjective preferences... are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). After pleading guilty, a defendant cannot demonstrate prejudice from counsel's performance where pleading guilty is "objectively, [the defendant's] best option." *United States v. Dyess*, 730 F.3d 354, 361-363 (4th Cir. 2013).

9

The law is well settled that Petitioner cannot now seek to undo the plea to which he expressly agreed at his Rule 11 hearing by claiming counsel forced his hand, failed to communicate with him, gave inadequate advice, or failed to negotiate a better plea agreement. A plea colloquy "affords the [government] substantial protection against later claims that the plea was the result of inadequate advice." *Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012). "In the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) (citations omitted) (citing cases of extraordinary circumstances to be when the government's concedes that the plea was involuntary or when defendant provides documentary evidence that he was severely ill, both physically and mentally, and uncounseled at the time of the Rule 11 colloquy); *see also United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) ("When a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process"). "Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 222. That is exactly the result warranted here.

Petitioner offers no allegations indicating the statements made at his plea colloquy were untrue, and thus he is bound by his plea colloquy statements, including

his guilty plea. Indeed, during the plea colloquy this Court confirmed with Petitioner that he signed the plea agreement, understood each term of the plea agreement, and had read and discussed the entire plea agreement with his lawyer before signing it. [D.E. 88 at 24.]. When asked if he was fully and completely satisfied with his lawyer's legal services, Petitioner did not indicate to the contrary. *Id.* at 13. Furthermore, the case against Defendant was strong. Defendant was caught with crack cocaine and two firearms, and then waived his Miranda rights and admitted to trafficking in excess of 10 kilograms of crack cocaine. Accordingly, Petitioner cannot establish his counsel's advice fell below an objective standard of reasonableness. Additionally, Petitioner has failed to establish that counsel's performance was prejudicial to him. Specifically, Defendant has not shown that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. *See Strickland*, 466 U.S. at 686.

2. Petitioner's claim that counsel was ineffective at the sentencing phase is without merit.

Petitioner's claim that his attorney provided ineffective assistance of counsel at the sentencing phase because counsel failed to properly discuss and explain the PSR to McNeil prior to the sentencing hearing, failed to file substantive objections to the PSR, and failed to file a Notice of Appeal is without merit. Indeed, these claims are specifically contradicted by Petitioner's sworn statements at the Sentencing hearing.

11

First, Petitioner claims that counsel failed to discuss the PSR with Petitioner and failed to file substantive objections. However, at the outset of the sentencing hearing, this Court confirmed that Defense counsel received a copy of the presentence report and that Petitioner discussed the presentence report with counsel. [D.E. 89 at 4]. This court also confirmed with both Petitioner and his counsel that there were no objections to the presentence report. *Id.*, at 5. Hearing no objections from either defendant or his counsel, this Court determined Petitioner's total offense level to be 31, his criminal history category to be VI, and the advisory guideline to be 262 to 327 months. *Id.*, at 5. After considering the Government's motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), and the arguments of defense counsel, this Court sentenced Petitioner to 108 months on Counts 1 and 7, and 60 months consecutive on Count 9, for a total sentence of 168 months. *Id.*, at 18. Accordingly, Defendant's contention that his counsel was ineffective at the sentencing phase is without merit.

Second, Defendant' claim regarding a notice of appeal fails because Defendant does not allege that he gave counsel specific instructions to file a notice of appeal. The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Indeed, "if counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478. Here, by Petitioner's own admission, counsel consulted with him regarding appeal

12

and Petitioner did not give counsel specific instruction to appeal. According to Petitioner, "Morrison asked McNeil if he wanted to appeal but told him "not to worry about it because there was nothing to appeal, and that McNeill received the best deal he could have gotten anyway." [D.E. 82 at 28]. Nowhere does Petitioner allege that he responded to counsel's consultation and inquiry regarding appeal by giving specific instructions to appeal. Notably, Petitioner's failure to give specific instruction to counsel to file a notice of appeal is consistent with his plea agreement. In Defendant's plea agreement, he expressly waived his right to appeal "reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range established at sentencing." [D.E. 59 at 2.c.]. This Court sentenced Petitioner to a term of imprisonment substantially below the advisory guideline range. Accordingly, Petitioner's claim regarding counsel's failure to file a notice of appeal is without merit and should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Petitioner's Section 2255 Motion is without merit and should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

Respectfully submitted, this 9th day of May, 2022.

MICHAEL F. EASLEY, JR.
United States Attorney


BY: /s/ John P. Newby, Jr.
JOHN P. NEWBY, JR.
Assistant United States Attorney
Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4167
Email: John.Newby@usdoj.gov
N.C. Bar # 41480
Attorney for Respondent

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this 9th day of May, 2022, served a copy of this document upon the below-listed party by electronically filing it with the Court using the CM/ECF system or placing a copy in the United States Mail to the following:

Elbert Tojuan McNeill
Reg. No. 65851-056
Bennettsville FCI
PO Box 52020
Bennettsville, SC 28512

BY: /s/ John P. Newby, Jr.
JOHN P. NEWBY, JR.
Assistant United States Attorney
Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4167
Email: John.Newby@usdoj.gov
N.C. Bar # 41480
Attorney for Respondent